State vs. Chase.

---

No. 9304.

## The State of Louisiana vs. Foster Chase, Jr.

Act 54 of the General Assembly of 1868 defines the qualifications of jurors throughout the State, and provides for the selection of competent and *intelligent* jurors.

There is no conflict between this Act and Act 98 of the same year  The latter Act by requiring the commissioners to draw the names of one thousand persons from those qualified to register as voters, from which to select competent jurors. does not thereby determine that such persons entitled to register are competent jurors. They must be guided by Act 54 in determining the question of competency.

The jurors must be, under Art. 116 of the Constitution and the Act 54, *intelligent* persons, and it is not an improper or illegal discretion on the part of the Jury Commissioners, under certain conditions, to determine the question of intelligence of a juror by his ability to read and write, not as an exclusive test, but as one of the means to such end.

It is not every error on the part of the trial judge that will suffice to set aside a verdict. It must be so serious as to justify the belief that the accused was prejudiced thereby, and but for such error, a different result might have been reached in the trial.

State vs. Chase.

APPEAL from the Criminal District Court for the Parish of Orleans. *Roman*, J.

---

*M. J. Cunningham*, Attorney General and *Lionel Adams*, District Attorney for the State, Appellee.

. *Henry C. Castellanos* for Defendant and Appellant.

---

The opinion of the Court was delivered by

TODD, J. The defendant was convicted of the murder of Marie Louise Prevost, and appeals from a death sentence pronounced in accordance with the unqualified verdict of the jury.

Through his counsel he complains that the trial judge erred in overruling his challenge to the array of the grand and petit jury, and in refusing to give the jury, by whom he was tried, a special charge requested by his counsel, except with an amendment thereto, to which he objected.

1. The challenge was based substantially upon the averment that the venire from which the jury was drawn, was not selected at large by the Jury Commissioners impartially from the citizens of the parish of Orleans, having the qualifications to register as voters, as required by Act 98 of the General Assembly, approved April 10, 1880; but that the Commissioners were guided in said selection by Act 54 of the same session, approved April 1, 1880.

That said last act, it is charged, contained qualifications for jurors repugnant to those prescribed by Act 98, and the commissioners, by their action, excluded from jury service a number of persons who, under the last named act, were good and competent jurors, and that in so doing and in passing upon the competency and intelligence of jurors, they arrogated to themselves judicial functions not conferred in them by law.

We have examined critically the two acts referred to.

Act 54 is entitled An Act " To carry into effect Article 116 of the Constitution, to provide the qualifications and for the selection of competent and intelligent jurors throughout the State."

The act then proceeds to define the qualifications of a juror throughout the State, and among other qualifications it declares that he must be a "competent and intelligent person, having capacity to serve as a grand juror and try and determine both civil and criminal cases."

This act is strictly an enabling act to carry into effect the article of the Constitution referred to in its title.

This article reads:

"The General Assembly, at its first session under this Constitution, shall provide by general law for the selection of competent and intelligent jurors, who shall have capacity to serve as grand jurors and try and determine both civil and criminal cases," etc.

Act 98 is entitled "An Act to organize the Criminal District Court of the parish of Orleans, as established by Article 130 of the Constitution of the State; to create a board of jury commissioners for the parish of Orleans; providing for the appointment of the same and the filling of vacancies therein; fixing the number of the board; defining its duties, powers and compensation; providing for the manner of drawing and selecting and empaneling grand, petit and tales jurors for the parish of Orleans; providing for the division of the Criminal District Court for the parish of Orleans into sections; providing for an annual vacation for each of the judges of said court; providing for the transfer of causes pending in the Superior Criminal and the First District Courts for the parish of Orleans to the Criminal District Court for said parish; providing for the appointment of a short hand reporter for the Criminal District Court for the parish of Orleans and fixing his salary, and to repeal all laws in conflict therewith."

The provisions of this act are in strict conformity with the title.

The question arises, is there a conflict between Act 54 and this Act 98 as charged by the defendant counsel?

Our examination of the two acts satisfies us that there is no such conflict.

The sole object of the first act was to declare the qualifications of jurors and provide for the selection of competent and intelligent jurors throughout the State.

The last named Act 98, is an enabling act to carry into effect Art. 130 of the Constitution, which required the establishment of a Criminal District Court for the Parish of Orleans; and, the main object of the act was to provide for the organization of such court, and as an incident thereto, for the appointment of jury commissioners and regulate the manner of drawing and selecting jurors for said parish.

There is nothing in this act that declares or defines the qualifications for such jurors. It is true that the commissioners are first directed "to select at large impartially from the citizens of the parish, having the qualifications to register as voters, the names of not less than one thousand persons, *competent* to serve as jurors," but, as we construe his clause, it does not convey the intent or meaning that the right to

register as voters determined of itself their competency, but on the contrary, the imperative requirement that these thousand persons must be competent to serve as jurors, repels such a conclusion.

The palpable meaning of it is, that these one thousand voters or persons entitled to vote, must be competent jurors, and to be selected exclusively with a view to their competency.

This is the more evident from the further requirement, that this list should be kept complete and supplemented from time to time; and to prepare such lists, and in order to the selection by the commissioners of none but good and competent jurors, they were to have access to the registration books, and have the right to subpœna witnesses and examine them on oath. The form of the oath is prescribed in the act, and it does not require the witness to answer questions touching the right of the person or persons so drawn *to register as voters*, but, in the express language of the prescribed oath, touching *their qualifications to serve as jurors*.

The entire details of the act relating to the drawing of the jurors, in the manner of their selection, are evidently designed to enable the commissioners to determine respecting their competency.

As there is nothing in this act to guide the commissioners in regard to the qualifications of the jurors,—nothing to define their competency—it is manifest that in the discharge of their responsible duties they must look elsewhere for the required information. And where else could they look except to Article 116 of the Constitution and to the enabling act under it, defining the qualifications of jurors, and in mandatory terms requiring the drawing and selection of none but "competent and intelligent persons, having capacity to serve as grand jurors and to try and determine both civil and criminal cases?

Consulting that act, they were, therefore, compelled to exclude from the list of jurors, all that the act declared incapable from serving in that capacity for the several causes therein expressly mentioned, and also to select none but *intelligent* persons, capable of discharging the responsible duties devolving on both grand and petit jurors.

We can easily perceive that, to determine this question of competency and intelligence, required a sound discretion and acute discrimination on the part of the commissioners, with which they were clothed under the terms of the statute, and with the exercise of which the courts should not interfere, unless there was a palpable and manifest abuse of that discretion in the means resorted to and adopted, to solve the question.

It does not seem unreasonable, where other conditions justified it, that they should adopt as one of the tests of intelligence in a juror his ability to read and write.   Not that the rule should be absolute and the inability of a juror in this respect should, in all cases, be cause for exclusion.   Though it might be forcibly argued that, from the nature of their duties, and the intricate and delicate questions of law and fact often submitted to jurors for determination, demanding, at times, the examination of written and documentary evidence, such degree of illiteracy as to be unable to read and write, should be ample cause for exclusion.

In this age of progress and enlightenment, when the facilities for education are so ample, and considering that the most useful and valuable information is derived from books and the press, it might reasonably be contended that a person so ignorant as to be unable to avail himself of such sources of knowledge, might not be considered competent to pass on questions affecting the lives, liberty and fortunes of men.

But, however this may be, the commissioners in this instance, as we find from the record, adopted no such exclusive rule.

We are further of opinion, that in resorting to this test as a means among others to determine this question of intelligence, the commissioners as charged by defendant's counsel, did not arrogate to themselves judicial powers.   The matter of intelligence was a fact to be solved as other facts involving no exercise of judicial functions.   Besides, intelligence in jurors was a constitutional requirement, and the legislature was clothed with adequate powers to have it determined by the means and instrumentalities it has adopted to this end.

We therefore conclude, that this ground of objection to the proceedings and acts of the jury commissioners is without merit.

2. The second complaint is, that the judge refused to charge as requested.

This is the charge asked:

" If from the whole evidence attending the homicide and the attempt of the prisoner to commit suicide, the jury believe he was laboring at that time under such a disordered condition of the mind as to render him unable to distinguish between the right and wrong of the act he was committing, then it is the duty of the jury to acquit."

In lieu thereof, the judge charged with the following modifications:

" If from the whole evidence attending the homicide and the *attempt of the prisoner to inflict a wound upon his own person*, the jury believe he was laboring at that time under such a disordered condition of

mind as to render him unable to distinguish between the right and wrong of the act he had committed upon the deceased, then it is the duty of the jury to render the following verdict: Not guilty by reason of insanity."

Both the charge asked and the one given are improper, so far as they refer to the prisoner's attempt to commit suicide or his attempt to inflict a wound on his own person, are referred to as a fact proved or established on the trial.

Even admitting, that the judge erred in making the substitution complained of, which we do not concede, it was certainly not an error of such gravity as to have worked the slightest injury or prejudice to the accused. It is surely not sufficient in any light that it can be viewed to vitiate the verdict. It is only when a court is satisfied that it has worked a real injury, that for such error a different result would have been reached, that it will set aside a conviction on account of it.

3. The question touching the plea of insanity and when pleaded whether it must be established by the defendant beyond a doubt, or whether a preponderance of evidence will suffice to justify an acquittal, does not seem to be seriously urged. The question, however, has been determined by this Court adversely to the counsel's contention in case of the State vs. DeRance, and from the principle in rule therein declared, we cannot recede.

Judgment affirmed.